# Exhibit A

Ryan B. Bell (9956)
Keith Saylin (20365)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, UT 84101
Telephone: (801) 994-4646
Email: rbell@kba.law
Email: ksaylin@kba.law

*Attorneys for Plaintiff Corwin Murray*

> **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**

---

## IN THE EIGHTH JUDICIAL DISTRICT COURT FOR DUCHESNE COUNTY, STATE OF UTAH

| | |
|---|---|
| CORWIN MURRAY, an individual, <br><br> Plaintiff, <br><br> v. <br><br> ALPHABET, INC., a Delaware corporation; GOOGLE, LLC, a Delaware limited liability company; and DOES I–X, <br><br> Defendants. | **COMPLAINT** <br><br> **JURY DEMANDED** <br><br> Case No. _____ <br><br> Judge _____ <br><br> TIER 3 |

Plaintiff Corwin Murray ("Mr. Murray"), through counsel of record, complains and alleges against Defendants Alphabet, Inc. and Google, LLC (collectively, "Google") as follows:

### INTRODUCTORY STATEMENT

This action arises from Google's broadcast to the world, through Google Gemini and Google services, that Mr. Murray—a hardworking, law-abiding man from a close-knit small community—was convicted of sex trafficking, sexual abuse, child endangerment, and drug-related offenses. These false assertions have upended every facet of his life and placed him on the brink of bankruptcy. Mr. Murray's personal and professional relationships have been

destroyed as a result. His business, contingent on those relationships and his reputation in the community, has fallen apart despite its once strong standing.

Mr. Murray has sustained significant damages as a result of these events. He is routinely confronted by family members, friends, and even strangers who question him about the publications and charges associated with his name. The widespread dissemination of these false allegations has already harmed his once-stellar reputation and threatens additional, unknown, consequences in the future. These harms are ongoing and will continue—particularly if left uncorrected. Mr. Murray's repeated attempts to resolve the matter through Google proved futile until it was far too late to restore his reputation. This lawsuit seeks an appropriate remedy to repair, to the extent possible, the substantial damage inflicted on his personal and professional life and affairs, to the fullest extent permitted under Utah law.

## PARTIES

1.      Corwin Lewis Murray is an individual residing in Roosevelt, Utah, which is part of Duchesne County, Utah.

2.      Mr. Murray is the sole owner of Murray Contract Maintenance ("MCM").

3.      Alphabet, Inc. is a Delaware corporation with its principal place of business in California, located at 1600 Amphitheatre Pkwy, Mountain View, CA 94043, USA.

4.      Google, LLC is a Delaware limited liability company with its principal place of business in California, located at 1600 Amphitheatre Pkwy, Mountain View, CA 94043, USA.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under Utah Code § 78A-5-102.

6.      This Court has personal jurisdiction over Defendants pursuant to Utah Code § 78B-3-205 because Defendants purposefully directed substantial business activities toward the

2

State of Utah causing substantial injuries to Plaintiff in Utah and for which resulted in the claims asserted herein.

7.      Specifically, Defendants purposefully directed tortious conduct toward Utah by publishing false and defamatory statements about Plaintiff through its Google Gemini artificial-intelligence platform. Gemini generated and disseminated false information concerning Plaintiff, a Utah resident whose business and professional reputation are centered in Utah, and Google knew or reasonably should have known that the statements concerned a Utah-based individual and that the brunt of the reputational and economic harm would be suffered in Utah.

8.      Venue is proper in this Court pursuant to Utah Code § 78B-3a-201because the causes of action arise in Duchesne County.

9.      This is a Tier 3 case under Utah R. Civ. P. 26 because Plaintiff's damages exceed $300,000.

## FACTUAL ALLEGATIONS

**Mr. Murray**

10.     Corwin Murray has been a respected, law-abiding citizen and small business owner in Duchesne County, Utah.

11.     He has never been arrested for, charged with, or convicted of sex trafficking, child endangerment, child abuse, or drug related crimes.

12.     Until the events giving rise to this action, he had never even been accused of such conduct.

13.     Among Mr. Murray's proudest accomplishments is his ability to build and maintain strong, lasting relationships. Whether in his personal life or professional endeavors, Mr. Murray has earned a reputation for honesty, reliability, and hard work.

3

14.     Mr. Murray resides in Duchesne County, Utah—a rural county with a population of fewer than 20,000 residents. Duchesne County, Utah, *Duchesne County Profile*, DUCHESNE COUNTY (last visited Feb. 12, 2026), https://duchesne.utah.gov/gov/about-the-county/duchesne-county-profile/.

15.     In a small, close-knit community like Duchesne County, reputation is paramount, as word travels quickly and personal and professional standing often rise or fall on trust, consistency, and years of demonstrated character.

16.     During his adult life, this has worked in Mr. Murray's favor; he was known as a dependable contractor, a hardworking businessman, and someone whose word could be trusted.

17.     In 2015, Mr. Murray founded MCM, a company specializing in the construction, management, and maintenance of commercial properties.

18.     From its inception, MCM was built on Mr. Murray's personal reputation.

19.     Mr. Murray invested his financial resources, time, skill, and credibility into establishing the company as a trusted service provider in Duchesne County.

20.     For more than a decade, Mr. Murray has devoted himself to building and growing MCM.

21.     He personally oversees projects, maintains client relationships, and ensures that work is performed to a high professional standard, consistently interacting with past, current, and potential customers as the face of MCM.

22.     Customers often retain MCM for business because of their relationship Mr. Murray.

23.     MCM's business model depends heavily on repeat customers and word-of-mouth referrals. The company's continued viability depends on the preservation of Mr. Murray's good

4

name.

24.     MCM's continued growth has been driven by satisfied clients who recommend Mr. Murray and his company to others in the community.

25.     MCM has consistently provided a multiple six-figure annual income for Mr. Murray.

26.     MCM's growth and stability was the direct result of Mr. Murray's personal credibly.

**Mr. Murray's Involvement and Volunteer Service in the Community**

27.     For sixteen years, Mr. Murray has been a proud member and volunteer of the Ute Tribe Search and Rescue Team.

28.     Mr. Murray's years of diligent work, service, and community commitment enabled him to advance through the ranks to the position of Captain of the Search and Rescue Team.

29.     Mr. Murray's role was a significant source of personal pride and constituted a meaningful professional networking connection that often generated business opportunities for MCM.

30.     Mr. Murray has also developed a significant online presence, growing his TikTok account to more than 46,000 followers.

31.     His TikTok platform has generated a modest stream of income.

**Google's Wrongful Statements and Publications**

32.     In the fall of 2025, Google, through its general search inquiries and its Artificial Intelligence platform, Google Gemini, published false accusations that would dramatically alter Mr. Murray's personal life and career.

33.    Although the number of relevant screenshots is too extensive to include in full here, the examples below drawn from publications appearing on Google represent only a small sample of the false allegations that have been disseminated regarding Mr. Murray:







34.     Google portrayed "Corwin Lewis Murray, 33, of Duchesne County, Utah" as a criminal and convicted sexual predator, confidently stating that "Corwin Murray was arrested in Roosevelt, Duchesne County Utah in May 2025 as part of an FBI nationwide sting operation targeting sex abuse."

35.     Google cited fabricated sources collectively reporting that Mr. Murray was arrested and charged with human trafficking, sexual abuse, child endangerment, and drug-related offenses.

36.     Among those charges, as Google states, is that "Murray faces five counts of second-degree felony forcible sexual abuse," and "five counts of third-degree felony endangerment of a child."

37.     Google published that, "The alleged victim stated that they met Murray in 2023, when the victim was 15 years old and Muray was 33. Reports further specify that Murray allegedly engaged in inappropriate sexual activity with the victim multiple times, in exchange for methamphetamine, and would often 'get high' with the victim and another individual" and claims that Mr. Murray "told police he had engaged in the sexual activity in exchange for drugs."

38.     Google stated that Mr. Murray would supply another induvial named Melissa or Michael Goodrich "with methamphetamine to have sexual intercourse with the victim on at least five separate occasions."

39.     Google published that "Murray is being held without bail in Duchesne County Jail."

40.     When asked to identify its sources or explain the basis for concluding it had the correct individual—i.e., "Corwin Lewis Murray"—Google responded affirmatively, citing purported sources and again stating his full name, age, and the area of the arrest corresponding to Mr. Murray's correct residence:

9



10



**The Damage Mr. Murray Incurred as a Result of Google's False Publications**

41.     These accusations made against Mr. Murray quickly became widely known throughout his community, including among friends, family members, professional contacts, and even strangers with whom he had no prior relationship.

42.     Mr. Murray was first made aware of the statements by his sister, who told him he is listed online as a sex trafficker. She informed him this information was provided by Google.

43.     Upon learning of this, Mr. Murray quickly conducted several searches on Google and through its Gemini product. He confirmed that Google's technology did in fact provide information suggesting that Mr. Murray had been charged with various predatory crimes.

44.     Upon information and belief, the allegations spread so pervasively that a

11

substantial portion of those within Mr. Murray's personal and professional circles became aware of—and accepted as true—the fabricated claims concerning him.

45.     Since the publication of these statements, Mr. Murray has endured a continual barrage of hostile and accusatory messages, telephone calls, and in-person confrontations demanding to know what "really happened" or accusing him outright of reprehensible conduct.

46.     Members of his own family and personal friends have referenced the allegations on numberless accounts, expressing shock, and questioning his character based solely on the information circulated about him.

47.     Mr. Murray's romantic relationship was likewise strained when his partner's family confronted him about the alleged conduct.

48.     The humiliation has also manifested in routine public settings. Strangers have approached Mr. Murray in local businesses, including stores and gas stations, to question him about supposed "charges" or to make disparaging remarks.

49.     Individuals who previously interacted with him without concern have altered their behavior, avoided him, or severed contact altogether.

50.     And individuals Mr. Murray had hired to clean his home stopped performing the service when their mother learned of the accusations. She barred her children from coming to his home, called him a "sex offender" and admitted to spreading that label around town before he could even explain that every word published about him was false.

51.     Rather than offering support, the majority of the individuals in Mr. Murray's circles treated the allegations as established fact, subjecting Mr. Murray to public embarrassment, strained personal interactions, and unwarranted criticism that damaged his standing in the community and caused significant emotional distress.

52.     Mr. Murray consistently attempted to explain that the accusations were entirely false; however, many individuals either refused to allow him to respond or, when they did listen, declined to believe his explanation in light of information presented by Google.

53.     The statements have shattered both his personal and professional life, with the most immediate impact being financial—lost clients, canceled contracts, and the growing threat of bankruptcy.

54.     Longstanding business partners have severed ties, and prospective deals have disappeared overnight, as several organizations have stated and/or alluded that they cannot risk associating with someone portrayed as a sex trafficker and felon.

55.     In August 2025, after the rumors were disseminated by Google broadcasting that Mr. Murray had engaged in predatory criminal conduct and had been arrested, Mr. Murray received formal written notice from the Commander of the Ute Tribe Search and Rescue Team terminating his affiliation with the Team and removing him from his position as Captain.

56.     The notice stated that its decision was made pursuant to the "unforeseen circumstances" and that he won't be readmitted "until the situation is resolved," if at all.

57.     The termination of this affiliation—and the goodwill associated with it—was directly caused by the circulation of false and defamatory information published by Google.

58.     Immediately upon receiving notice of his termination, Mr. Murray contacted the Tribe, explained the falsity of the allegations, and requested reconsideration of the decision.

59.     To date, and despite his efforts, Mr. Murray has not been permitted to resume his volunteer service with the Search and Rescue Team.

60.     Mr. Murray's business revenues from his ownership in MCM have declined precipitously.

13

61.     As a further result of Defendant's false and defamatory publications, Mr. Murray no longer feels safe in his daily life, including in public settings, online spaces, or even within his own home.

62.     Mr. Murray has become the target of harassment from individuals both within and outside his community, who have directed derogatory remarks, accusations, and ridicule toward him based on the fabricated allegations.

63.     Mr. Murray lost thousands of followers and has been subjected to persistent mockery and harassment through public comments, direct messages, and live-stream interactions, all addressing the apparent criminal record Google claims he has.

64.     The widespread repetition of these false allegations has caused profound emotional harm to Mr. Murray. His sense of self-worth, personal identity, and reputation—once grounded in service, diligence, and integrity—have been replaced by shame, humiliation, and public scorn.

65.     Mr. Murray has suffered the loss of business opportunities, damage to personal relationships, and the erosion of his standing in the community he has long served.

66.     Mr. Murray continues to experience persistent anxiety, sleeplessness, and an ongoing fear that the reputational damage inflicted upon him may never be fully repaired, all to his detriment in an amount to be proven at trial.

67.     Despite Mr. Murray's diligent efforts to correct the false information—including reporting the factual inaccuracies through Defendant Google's online reporting mechanisms and attempting to contact Google directly—the issues remain unresolved, necessitating the filing of this action.

## FIRST CAUSE OF ACTION
### Defamation and Defamation Per Se — Both Defendants

68.     Plaintiff repeats and incorporates by reference the preceding allegations.

69.     Defendants published statements about Mr. Murray that he engaged in and was arrested for illegal activity.

70.     The statements were defamatory.

71.     Defendants intended the statements to refer to Mr. Murray, which was specified by name, age, and location of his residence in the publications.

72.     Alternatively, Defendants acted negligently in failing to confirm the accuracy of the statements prior to publishing the false accusations online and reenforcing them as true to the viewers.

73.     The false statements and implications arising from the publications are presented as statements of fact, not opinion. To the extent any of the statements are couched as opinions, the surrounding context suggests to the reader that such statements are premised on facts known to Defendants.

74.     The statements were not subject to privilege.

75.     The statements published by Google are false.

76.     Defendants knew or should have known the false statements regarding Mr. Murray were false based on the complete absence of any supporting evidence, the review of materials cited by Google confirming the inaccuracies, and publicly available information that was either known to them or could have been discovered through reasonable diligence.

77.     Accordingly, at the time that Defendants published the statements, they did not take reasonable care to avoid the publication of entirely false information as they had actual knowledge that the statements could not be true or should have entertained serious doubts as to

15

whether the statements were true.

78. Put simply, Defendants have acted with knowledge of the falsity of the statements, or with reckless disregard to their truthfulness, and without care for the injuries Defendants caused.

79. The false statements call into question Mr. Murray's honesty, integrity, virtue, and/or reputation, and thereby exposed Mr. Murray to public hatred, contempt, or ridicule in the eyes of at least a substantial portion, if not all, of its audience.

80. The statements constitute defamation *per se* because they accuse Mr. Murray of engaging in criminal conduct, including sex trafficking, sexual abuse, child endangerment, and engaging in sexual activity with a minor in exchange for methamphetamine.

81. The serial and ongoing publication and misinformation spread by Defendants is causing, and will continue to cause, injuries to Mr. Murray.

82. That necessarily includes reputational harm to Mr. Murray, including, without limitation, lost business opportunities.

83. As a result, Mr. Murray has suffered actual damages in an amount to be proven at trial, but in no event less than $2,500,000.00.

84. Defendants' acts demonstrate willful or reckless indifference to Mr. Murray's rights and are so egregious as to warrant punitive damages in support of this cause of action.

**SECOND CAUSE OF ACTION**
**False Light — Both Defendants**

85. Plaintiff repeats and incorporates by reference the preceding allegations.

86. Defendants published statements about Mr. Murray that he engaged in and was arrested for illegal activity.

87. Defendants published the statements about Mr. Murray, which objectively

16

included statements and implications that would communicate to a reasonable reader that Mr. Murray was arrested and charged with sex trafficking, sexual abuse, child endangerment, and drug-related offenses.

88.    The false statements and implications arising from the publications place Mr. Murray before the public in a false light.

89.    The false light in which Mr. Murray has been placed would be highly offensive to any reasonable person, as it confidently yet wrongfully portrays Mr. Murray as an individual arrested and charged with sex trafficking, sexual abuse, child endangerment, and drug-related offenses.

90.    Defendants knew or should have known the false statements regarding Mr. Murray were false based on the complete absence of any supporting evidence, the review of materials cited by Google confirming the inaccuracies, and publicly available information that was either known to them or could have been discovered through reasonable diligence.

91.    Accordingly, at the time Defendants published the statements, they did not take reasonable care to avoid the publication of entirely false statements, as they had actual knowledge that the statements were false or should have entertained serious doubts as to whether they were true.

92.    Put simply, Defendants have acted with knowledge of the falsity of the statements, or with reckless disregard to their truthfulness, and without care for the injuries Defendants caused.

93.    That necessarily includes reputational harm to Mr. Murray, including, without limitation, lost business opportunities.

94.    As a result, Mr. Murray has suffered actual damages in an amount to be proven at

17

trial, but in no event less than $2,500,000.00.

95.     Defendants' acts demonstrate willful or reckless indifference to Mr. Murray's rights and are so egregious as to warrant punitive damages in support of this cause of action.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Utah Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims and issues so triable. *See* Utah. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant:

1.     That judgment be entered in favor of Mr. Murray;

2.     That Mr. Murray be awarded compensatory damages for cost and damages incurred as a result of the above-described actions in an amount to be determined at trial, but not less than the threshold amount of $2,500,000.

3.     That Mr. Murray be awarded a permanent injunction against Defendants, restraining them from further publishing the false statements described or any similar statements;

4.     That Mr. Murray be awarded post-judgment interest at the highest amount permitted by law;

5.     That Mr. Murray be awarded its costs and fees associated with brining this case; that Mr. Murray be awarded punitive damages, as allowed by law, for Defendants' intentionally tortious conduct and reckless indifference for Mr. Murray's rights as may be determined at trial; and

6.     That the Court grant such other relief as it may deem just and proper.

DATED: April 15, 2026

Respectfully Submitted,

**KUNZLER BEAN & ADAMSON, PC**


/s/ *Ryan B. Bell*
Ryan B. Bell
Keith J. Saylin

*Attorneys for Plaintiff Corwin Murray*

19